UNITED STATES DISTRICT COURT　　　　　　　　　ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
ALVIN McLEAN,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Plaintiff,　　　　　　　:　　MEMORANDUM
　　　　　　　　　　　　　　　　　　　　　　　　　:　　AND ORDER
　　　　　　　- against -　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　08-CV-5200 (JG)
RICHARD BROWN, THE CITY OF　　　　　　　　:
NEW YORK, THE QUEENS COUNTY　　　　　　:
DISTRICT ATTORNEY'S OFFICE,　　　　　　　　:
KEVIN FOGARTY, GREGORY PAVLIDES,　　　:
JOHN CASTELLANO, MARK KATZ, STEVEN　:
CHANANIE, LINDA CANTONI, AL GARCIA,　　:
CHERYL HONE, LISA DRURY, ROBIN　　　　　:
FORSHAW, YOUNG C. LEE, WILLIAM R.　　　:
HORWITZ, GEORGE FREED, JOSETTE　　　　:
SIMMONS-MCGHEE, GARY FIDEL, MERRI　　:
TURK LASKY, JOHN DOES, JANE DOES,　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Defendants.　　　　　:
----------------------------------------------------------------- X

A P P E A R A N C E S :

　　　ALVIN McLEAN
　　　# 93-A-9397
　　　Shawangunk Correctional Center
　　　P.O. Box 700 Wallkill, New York 12589
　　　　　　Plaintiff, *pro se*

　　　MICHAEL CARDOZO
　　　Corporation Counsel for the City of New York
　　　100 Church Street, Room 3-188
　　　New York, New York 10007
　　　By:　Shlomit Aroubas
　　　　　　Attorney for Defendants

JOHN GLEESON, United States District Judge:

　　　Alvin McLean brings this action under 42 U.S.C. § 1983, contending that the

Queens County District Attorney's Office ("the D.A.'s Office") has violated and continues to

violate his constitutional rights by failing to give him certain documents relevant to his 1993

state-court criminal trial.  The defendants, who include the City of New York, the D.A.'s Office, and various Assistant District Attorneys who worked on McLean's case over the years, have moved to dismiss the action for failure to state a claim upon which relief may be granted.  After the motion to dismiss was filed, McLean sought leave to amend the complaint to include additional allegations against the defendants.  For the reasons stated below, I grant the defendants' motion to dismiss the complaint in its entirety, and deny McLean's cross-motion to amend the complaint.

BACKGROUND

This action is the latest move in McLean's campaign to challenge convictions arising from a Queens jury's determination that he participated in a 1987 murder.  McLean's efforts have produced two prior opinions of this Court; those opinions contain more detailed histories of the underlying proceedings.  *See McLean v. McGinnis*, No. 97-CV-3593, 2008 WL 312765 (E.D.N.Y. Feb. 4. 2008); *McLean v. McGinnis*, 29 F. Supp. 2d 83 (E.D.N.Y. 1998). Here, I set forth the facts relevant to McLean's latest action.

A.  *The Shootings of Andrew Garret and James Garcia*

In August 1987, fifteen-year-old James Garcia was staying with his friend Andrew Garret in the basement of a house in Queens, New York.  Garret and Garcia formerly worked for a marijuana distribution gang named "Slice," but had switched their allegiances to a rival organization called "Pillow."  On the night of August 3, 1987, two other men entered the basement.  One of these men was Garfield Wright, a member of Slice.  The two men shot Garret and Garcia, and took money from Garret's pocket.  Garret died, and Garcia was seriously injured.

B.   *McLean's Trial, Conviction, and Direct Appeal*

The authorities soon suspected that McLean was the second shooter.  McLean was arrested and charged with the shootings, but he escaped from custody while awaiting trial.  More than four years later, he was apprehended by the FBI after a high-speed car chase through the streets of Miami.

At the trial, Garcia testified that McLean was the second shooter.  In addition, NYPD Detective Robert Cianfrone testified that Garcia had identified McLean from a photo-array while recovering from the shooting in the hospital.

The defense's theory of the case was that the second shooter was not McLean but Peter Young, a leader of Slice who was also known as "Mack."  By the time of McLean's trial, Mack had died in prison.  In support of the defense theory, McLean's counsel offered the testimony of Mack's younger brother, Jeffrey Young, as well as the testimony of Wright and of Tyrone Lawrence (known as "Tee"), who stated that McLean was not a member of Slice and that Mack was responsible for the murder.  As part of its challenge to the government's case, the defense contended that Garcia himself had initially identified Mack from a photo-array, before being persuaded by the police to implicate McLean.  Tee testified that he was present at the disputed identification in his capacity as a government informant.  The defense attorney sought to elicit testimony from Tee that Garcia initially selected a picture of Mack, rather than one of McLean. The trial court, however, ruled that Tee's testimony concerning the photo-array was inadmissible hearsay.

On November 19, 1993, the jury convicted McLean of second-degree murder, attempted murder, first-degree robbery, assault, and criminal possession of a weapon.  McLean

3

was sentenced principally to a prison term of twenty-five years to life for murder and to a consecutive term of eight-and-one-third years to twenty-five years for attempted murder.

McLean appealed to the Appellate Division, Second Department, which affirmed the convictions. *People v. McLean*, 640 N.Y.S.2d 265 (2d Dep't 1996). On June 20, 1996, a Judge of the New York Court of Appeals denied McLean's application for leave to appeal. *People v. McLean*, 88 N.Y.2d 938 (1996) (Levine, J.).[1]

C.  *McLean's Habeas Petition*

On June 19, 1997, McLean filed a petition in this Court under 28 U.S.C. § 2254, challenging his convictions by claiming that various evidentiary rulings deprived him of his constitutional right to present a defense. On October 21, 1998, I denied the petition. *McLean v. McGinnis*, 29 F. Supp. 2d 83, 90-100 (E.D.N.Y. 1998). Though I agreed that the trial court had erred in one respect – namely, by refusing to admit Tee's hearsay testimony for the purpose of impeaching Garcia's claim that he identified McLean in the hospital – I concluded that this evidentiary mistake did not rise to the level of a constitutional violation. Limiting Tee's testimony did not deprive McLean of a fundamentally fair trial, because the defense had ample opportunity to impeach Garcia's testimony in numerous other ways. In any event, the error was harmless because "the evidence of [McLean's] guilt was overwhelming." *Id.* at 99.

I granted McLean a certificate of appealability on the issue of whether limiting Tee's testimony deprived him of a fair trial. The Second Circuit concluded that it did not, and affirmed my denial of the habeas petition. *McLean v. McGinnis*, No. 98-3753, 1999 WL 642925

---

[1] In addition, McLean twice sought a writ of error *coram nobis* in the Appellate Division, claiming that he was denied the right to effective assistance of appellate counsel. Each of these applications was unsuccessful. *See People v. McLean*, 800 N.Y.S.2d 647 (2d Dep't 2005), *leave to appeal denied*, 6 N.Y.3d 778 (2006) (Levine, J.); *People v. McLean*, 782 N.Y.S.2d 653 (2d Dep't 2004), *leave to appeal denied*, 4 N.Y.3d 746 (2004) (Graffeo, J.).

(2d Cir. Aug. 20, 1999) (summary order). The appellate court agreed that any error was harmless, given that Tee's testimony would have been largely cumulative of other evidence upon which the defense was able to rely at trial. *Id.* at *1-2. McLean's petition for a writ of certiorari to the United States Supreme Court was denied on December 6, 1999. *McLean v. McGinnis*, 528 U.S. 1050 (1999).

D. *McLean's Efforts to Gain Disclosure of Documents under the Freedom of Information Law*

One week after his conviction, McLean filed a Freedom of Information Law ("FOIL") request with the Records Access Officer of the D.A.'s Office for access to documents from his criminal file. Over a period of more than three years, McLean repeated his request on several occasions; the D.A.'s Office stated that it was attempting to locate the file. In February 1997, the D.A.'s Office notified McLean that his FOIL request was denied because the trial folder for the case was lost. After an unsuccessful appeal to the FOIL Appeals Officer, McLean filed an Article 78 proceeding in an attempt to compel the D.A.'s Office to locate the trial folder; that proceeding was terminated, apparently for want of prosecution.

On March 7, 2000, McLean made another FOIL request. In December of that year, the D.A.'s Office sent a list of discloseable documents, but stated that the Office did not possess any documents relating to payment or compensation of witnesses. On January 5, 2006, however, the D.A.'s Office released two further documents to McLean, both of which were letters written by Assistant District Attorney Steve Zissou to City officials ("the Zissou letters"). The Zissou letters were written while McLean was a fugitive from justice; the first, dated April 11, 1988, noted that McLean was an "ever present threat to [Garcia's] safety and well being." This letter was written to the Welfare Department, and confirmed that the Department was helping Garcia's mother – who received public assistance – by housing her in temporary

5

accommodation to protect her from McLean. The other letter, dated October 11, 1988, urged the Housing Department to give the Garcia family's application for housing "as much priority as possible." According to McLean, the Zissou letters were not disclosed before or at trial.

E.  *McLean's Section 440.10 Motion*

On May 2, 2006, McLean moved in the Supreme Court, Queens County, to vacate his judgment of conviction under New York Criminal Procedure Law § 440.10. He contended, among other things, that the D.A.'s Office had failed to disclose assistance it had given to Garcia, thereby violating its obligations under *Brady v. Maryland,* 373 U.S. 83 (1963), and *People v. Rosario*, 9 N.Y.2d 286 (1961). McLean claimed that the prosecutors' failure to disclose the Zissou letters required vacatur of the judgment of conviction. McLean also requested disclosure of unredacted versions of documents originating in the D.A.'s Office and disclosed to McLean in redacted form by the F.B.I. According to McLean, these documents substantiated his claims that Garcia and his mother were given undisclosed assistance in exchange for helpful testimony, and that Mack was a government informant.

The Supreme Court, Queens County denied McLean's § 440.10 motion on July 14, 2006. *People v. McLean*, No. 5389/87 (N.Y. Sup. Ct. July 14, 2006), *leave to appeal denied*, No. 2006-08497 (2d Dep't Oct. 24, 2006). With respect to the Zissou letters, Justice Grosso determined that those documents "do not contradict any representations made at trial with respect to possible inducements for Garcia's testimony." *Id.* at 9. In addition, the court concluded that, even if the prosecution was under a legal obligation to disclose the Zissou letters, "there is no reasonable possibility that the failure to disclose them contributed to defendant's conviction." *Id.* at 10. Indeed, the court found that the letters – which suggest that Garcia and

6

his mother had reason to fear violence from McLean while he was on the run – would have been more prejudicial to McLean than helpful if disclosed to the jury. *Id.*

F.      *McLean's Attempt to Resuscitate His Habeas Petition in this Court*

In 2006, McLean returned to this Court, seeking relief under Federal Rule of Civil Procedure 60(b) from my 1998 decision denying the habeas petition. He also filed a renewed petition asserting new challenges to the conviction. Among other new arguments, McLean contended that he was denied due process at trial when the prosecution failed to disclose the assistance to Garcia and his mother, as evidenced in the Zissou letters.

Because McLean's submissions sought to attack the integrity of the judgment underlying his conviction, rather than the integrity of my earlier decision to deny the initial habeas petition, I denied the Rule 60(b) motion, and transferred McLean's submissions to the Second Circuit so that they could be considered as a successive habeas petition. *See* 28 U.S.C. § 2244(b)(3)(a). The Second Circuit affirmed the denial of motion to reopen the initial petition, and denied leave for McLean to file another habeas petition, concluding that McLean "ha[d] not presented any new law or evidence within the meaning of § 2244(b) in support of his claims." *McLean v. McGinnis*, Nos. 08-cr-0606, 08-cr-0608, 06-cr-0863 (2d Cir. Apr. 24, 2008).

G.      *This Action*

On December 9, 2008, McLean filed this action under 42 U.S.C. § 1983 against the City of New York, the D.A.'s Office, and several Assistant District Attorneys who worked on McLean's case through its various stages. McLean asserts that the defendants engaged in bad faith non-disclosure of relevant material, and that the defendants' failure to disclose evidence led to his conviction. He also alleges that, after he was convicted, defendants' continued failure to

7

disclose material evidence caused him to lose his appeal from, and his post-conviction challenges to, the judgment of conviction.[2]

McLean seeks declaratory relief stating that the defendants have violated his constitutional rights by refusing to disclose exculpatory evidence. Additionally, he seeks a "substitute but equivalent remedy for the consequences Plaintiff suffered as a result of defendant's action which denied him meaningful access to the courts during both his direct appeal and his one opportunity for federal habeas review under AEDPA," and damages to compensate him for the attorney's fees he paid to bring his initial habeas petition. *Id.* Moreover, McLean asks the Court to issue an injunction ordering the defendants to disclose all documents within their possession related to McLean's criminal case, or, alternatively, to disclose all documents to which McLean was entitled to prior to or at trial. *Id.*

Defendants now move to dismiss the complaint for failure to state a claim upon which relief may be granted. McLean opposes the motion to dismiss, and also seeks leave to amend his complaint by adding allegations that the defendants conspired to single him out for arbitrary and unfair treatment.

DISCUSSION

A. *The Standard for Rule 12(b)(6) Motions*

Motions to dismiss under Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant

---

[2] On August 31, 2009, McLean wrote to the Court complaining that staff members at Shawangunk Correctional Facility were hindering his efforts to litigate his case, and alleging that the defendants had instigated a campaign of harassment against him. I directed the defendants to show cause why McLean's letter should not be construed as amending the complaint to allege a retaliation claim. In his opposition to defendants' motion to dismiss, however, McLean now states that he does not wish to allege a retaliation claim in this case.

8

is entitled to offer evidence to support the claims." (internal quotation marks omitted)). Accordingly, I must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam), and "draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

In reviewing the complaint, I am mindful that "a *pro se* complaint … must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S at 94 (internal quotation marks omitted). If a liberal reading of the complaint gives any indication that a valid claim might be stated, this Court must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

B.  *The Scope of § 1983 in the Post-Conviction Context*

As an initial matter, much of the relief that McLean requests is not properly cognizable in a claim under § 1983. Habeas corpus provides the exclusive federal remedy for a state prisoner who wishes to challenge the fact of his conviction. Accordingly, to the extent that McLean's complaint is construed to seek release from custody, the action must be dismissed for failure to state a claim. *See Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973) (a § 1983 action will not lie when a state prisoner challenges the fact of his confinement, and seeks immediate release from prison). The same is true of McLean's request for a declaratory judgment stating that the defendants violated his constitutional rights at trial by depriving him of access to exculpatory evidence. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (a state prisoner proceeding under § 1983 may not seek declaratory relief that entails the conclusion that his imprisonment is unconstitutional).

9

By contrast, McLean's claim to an injunction requiring the D.A.'s Office to turn over all documents in its possession pertaining to his case does not appear to run afoul of the habeas-corpus-inspired limitation on § 1983 actions, at least as that limitation has been interpreted by the Second Circuit.[3] *See McKithen v. Brown*, 481 F.3d 89, 103 (2d Cir. 2007), *abrogated on other grounds by Dist. Attorney's Office for Third Jud. Dist. v. Osborne*, 129 S.Ct. 2308 (2009). In essence, the requested injunctive relief is a discovery order to the D.A.'s Office requiring it to disclose material that may call into question the credibility of one the trial witnesses. Though such an order might conceivably assist McLean's efforts to gain release, it would not "necessarily demonstrate" the invalidity of his conviction. *Id.* at 102. "[T]hat a prisoner's success might be merely helpful or *potentially* demonstrative of illegal confinement is … irrelevant" to the scope of the *Preiser-Heck* limitation on § 1983 claims. *Id.* Therefore, this claim is properly brought under § 1983, and I will proceed to consider the merits of McLean's contention that he is constitutionally entitled to a prospective order requiring post-conviction disclosure of evidence.

McLean's backward-looking claim for relief with respect to the D.A.'s Office's post-conviction failure to turn over the Zissou letters presents a more difficult question concerning the relationship between § 1983 and habeas corpus. McLean seeks a declaratory judgment stating that the D.A.'s Office failed to meet a post-conviction constitutional obligation to turn over relevant documents. McLean also requests money damages to reimburse him for the cost of his unsuccessful initial habeas petition. A § 1983 plaintiff may not "recover damages for

---

[3] During the October 2009 Term, the Supreme Court issued a writ of certiorari to consider whether a post-conviction claim to access evidence is cognizable under § 1983, but the Court ultimately resolved the case before it without deciding that issue. *Dist. Attorney's Office for Third Jud. Dist. v. Osborne*, 129 S.Ct. 2308, 2319 (2009).

allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the judgment of conviction has been reversed or vacated in some other forum. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). An award of damages against the D.A.'s Office for failing to disclose material evidence *prior to trial* would necessarily call into question the validity of the underlying conviction, and would hence be barred in the absence of a determination that the conviction was invalid. But McLean's claims with respect to the Zissou letters are based, at least in part, on the theory that the D.A.'s Office should have disclosed the letters *after the trial*. As explained below, I find that these claims fail on the merits, so I assume, without deciding, that they may be brought under § 1983.

C.      *The Merits of McLean's Constitutional Claims*[4]

Section 1983 gives a cause of action to those who challenge a State's "deprivation of any rights ... secured by the Constitution." 42 U.S.C. § 1983. McLean's constitutional claims are premised on the Fourteenth Amendment's guarantees of liberty and equality: the Due Process Clause and the Equal Protection Clause.

1.      *The Due Process Clause*

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of a protected liberty interest without providing adequate procedural protections. As the United States Supreme Court has recently explained, a state prisoner has a

---

[4] In addition to the arguments discussed in the text, the defendants assert that McLean's claims are barred, in part, by the applicable statute of limitations and by the operation of the doctrine of collateral estoppel. Furthermore, the Assistant District Attorney defendants argue that absolute immunity bars any claim against them, and the City of New York contends that McLean has not sufficiently alleged that any constitutional violation was the result of a City custom or policy. Because I conclude that, to the extent they are cognizable in a § 1983 action, McLean's claims lack merit, I need not consider the defendants' additional objections to the complaint.

liberty interest in demonstrating his innocence with new evidence under state law. *Dist. Attorney's Office for Third Jud. Dist. v. Osborne*, 129 S.Ct. 2308, 2319 (2009). The question in this case is therefore whether the state has afforded McLean sufficient process in his efforts to demonstrate his innocence.

When a court performs the constitutional calculus, the degree of procedural protection to which a plaintiff is entitled depends in large part on the strength of the plaintiff's liberty interest. In this respect, McLean's state-court conviction puts him at a disadvantage. Courts recognize that a prisoner's post-conviction liberty interest is considerably less powerful than a defendant's pre-conviction liberty interest. A valid conviction ends the defendant's entitlement to crucial protections like the presumption of innocence and the requirement of proof beyond a reasonable doubt. *See, e.g., Herrera v. Collins*, 506 U.S. 390, 399 (1993) ("Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears."). Though McLean continues to assert that the conviction was procured by unconstitutional means, that assertion can be considered only in a habeas petition, not in a § 1983 claim.[5] McLean thus stands in the same position as a prisoner who concedes that his conviction was the result of a constitutionally valid trial, but seeks evidence to establish his innocence as a means to state-court post-conviction relief, clemency proceedings, or relief from conviction via prosecutorial consent.

Facing a conviction determined to be constitutionally valid by state and federal courts, McLean has no general right to material exculpatory evidence. Prior to trial, a defendant

---

[5] A habeas petitioner seeking to establish that his conviction was procured by unconstitutional conduct may seek discovery in connection with that claim. *See* Rules Governing § 2254 Cases in the United States District Courts 6(a) ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure").

has a general right to material exculpatory evidence in the government's possession, *see Brady v. Maryland*, 373 U.S. 83 (1963), but after a conviction "*Brady* is the wrong framework." *Osborne*, 129 S.Ct. at 2320; *see also Nwobi v. Kelly*, No. 06-CV-4848 (JG), 2006 WL 2882572 (E.D.N.Y. Oct. 5, 2006) (the Due Process Clause confers no post-trial right to inspect ballistics evidence). In *Osborne*, the Supreme Court rejected a freestanding substantive due process right to DNA evidence. Similarly, McLean lacks a general right to documents in the government's possession that could be germane to the question of his guilt or innocence.

A prisoner's post-conviction due process right to evidence is limited; it extends only to the proper application of a state-created right to such evidence. McLean can prevail on a due process claim only if the state's procedures are "fundamentally inadequate to vindicate the substantive rights provided." *Dist. Attorney's Office for Third Jud. Dist. v. Osborne*, 129 S.Ct. 2308, 2320 (2009). The issue is "whether consideration of [McLean's] claim within the framework of the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.' " *Id.* (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992) (internal quotation marks omitted)).

New York's Freedom of Information Law ("FOIL") provides the only state-created right to documentary evidence for a New York prisoner.[6] *See* N.Y. Pub. Off. Law §§ 84, *et. seq.* Under FOIL, all government records are presumptively open to the public, and the New

---

[6] A prisoner seeking post-conviction relief in the New York state courts pursuant to New York Criminal Procedure Law § 440.10 generally has no right to discovery in connection with that proceeding. Section 440.30(1-a) provides an exception to that rule for movants requesting a DNA test who establish a reasonable probability that such a test would have produced a more favorable verdict at trial. *See also Newton v. City of New York*, No. 07 Civ. 6211(SAS), 2010 WL 323050 (S.D.N.Y. Jan. 27 2010) (allowing a § 1983 claim to proceed to trial based on evidence of fundamental unfairness in the administration of New York's DNA testing procedures).

13

York Court of Appeals has held that criminal defendants seeking information about their own cases qualify as members of the public for this purpose. *Gould v. New York City Police Dep't*, 89 N.Y.2d 267, 274 (1996). A prisoner may make a FOIL request for records to the relevant agency – here, the D.A.'s Office. If the FOIL request is denied, the prisoner may resort to the agency's appeals body, if any – in this instance, the D.A.'s Office's FOIL Appeals Officer. After exhausting his administrative remedies, the prisoner may challenge the denial in a state-court action for judicial review under Article 78 of the CPLR. *See Schuloff v. Fields*, 950 F. Supp. 66, 67-68 (E.D.N.Y. 1997) ("The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to N.Y.C.P.L.R. Article 78 upon exhaustion of administrative remedies.").

The allegations in McLean's complaint fall short of establishing that New York's post-conviction procedures for accessing documentary evidence are fundamentally unfair. On their face, FOIL's procedures provide an adequate means of protecting the prisoner's interests, including access to judicial review in state Supreme Court in the event of an adverse administrative determination. And McLean does not identify any violation of fundamental fairness in the way that FOIL's procedures operated in his case. The allegations in the complaint, if true, establish that McLean was subjected to unfortunate delays in the production of relevant documents. McLean reacted to those delays by invoking FOIL's procedures. Probably as a result of those procedures, McLean's trial folder has long since been unearthed, and the D.A.'s Office has disclosed the Zissou letters. To the extent that McLean asks this Court to order the D.A.'s Office to produce all documents in the possession of the Office pertaining to his case, he asks too much. Section 1983 provides a remedy for specified unconstitutional conduct; it should not be used as a general discovery tool in aid of state law proceedings.

14

McLean was afforded access to state law procedures that cannot be characterized as "fundamentally unfair," and the Fourteenth Amendment's Due Process Clause entitles him to nothing more. Accordingly, McLean fails as a matter of law to state a due process claim.

2. *The Equal Protection Clause*

As for his claim under the Fourteenth Amendment's Equal Protection Clause, McLean does not contend that the defendants have discriminated against him on the basis of membership of any protected class.[7] Rather, he seeks to assert a "class-of-one" claim, alleging that the defendants have singled him out for mistreatment by depriving him of access to exculpatory evidence.

To satisfy the stringent standard for a class-of-one claim, McLean must establish that he was treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam). To succeed on this kind of claim, a plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *abrogated on other grounds by Engquist v. Oregon Dep't of Agriculture*, 128 S.Ct. 2146, 2155-57 (2008). In this case, McLean does not even seek to identify any materially-identically-situated comparator who has been treated differently from

---

[7] To the extent that McLean claims membership in the class of "accused" or "convicted" persons, his membership in those classes does not give rise to an equal protection claim. *See, e.g., Lee v. Governor of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996).

15

him, and cannot plausibly allege that the circumstances of his treatment exclude the possibility of a mistake. Accordingly, the equal protection claim fails as a matter of law.

After receiving the defendants' motion to dismiss, McLean moved to amend the complaint in an attempt to bolster his equal protection claim, and submitted a proposed amended complaint. While leave to amend is granted liberally, leave may be refused where amending the complaint would be futile. *See Min Jin v. Metro Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). A proposed amendment is futile when it fails to state a claim. *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990). Here, amending the complaint would serve no purpose; even with the additional allegation that McLean was singled out for adverse treatment by the defendants, McLean still fails to state a plausible "class of one" equal protection claim for the reasons stated above.

D. *Unserved Defendants*

In addition to the defendants who have moved to dismiss the action, McLean has named as defendants several former Assistant District Attorneys who no longer work at the D.A.'s Office. It appears from the docket sheet that these additional defendants have not been served with the complaint. Because McLean is proceeding *in forma pauperis*, however, I am required to dismiss the action, *mea sponte*, if at any time I determine that the action fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(b)(ii). Because McLean's claims against the unserved defendants necessarily fail for the same reasons that the complaint fails to state a claim against the served defendants, I exercise my authority to dismiss the complaint as it pertains to the unserved defendants.

CONCLUSION

For the reasons stated above, the motion to dismiss the complaint is granted, and McLean's motion to amend the complaint is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated:   June 25, 2010
         Brooklyn, New York